FRUGÉ, Judge ad hoc.
This is a suit for Workmen’s Compensation at the rate of $20 per week for 400 weeks and medical expenses not exceeding $500. The Trial Judge rendered a written opinion dismissing plaintiff’s suit as to both defendants. Plaintiff prosecutes this appeal.
The plaintiff, Robert W. Furlow, a white man twenty-two years of age, brought suit against J. W. Carruth, doing business as Magnolia Sand and Gravel Co., and Ray Clark, an individual, alleging that he was employed by Ray Clark as a truck driver and earned an average weekly wage of $32. He further alleged that on the afternoon of February 20, 1948, he sustained injuries to his back while loading gravel at the pit of the'Magnolia Sand and Gravel Co. into a truck owned by Ray Clark. Co-defendant J. W. Carruth, doing business as Magnolia Sand and Gravel Co.,' answered' the plaintiff’s petition and denied any liability to plaintiff, denied the occurrence of the alleged accident, denied that plaintiff suffered any injury and denied that he was in any way disabled.
Co-defendant Ray Clark answered the plaintiff’s petition and denied the occurrence of the alleged accident, denied that plaintiff suffered any injury while in the employ of Clark and denied any knowledge of any alleged accident or injury until some three weeks after February 20,- 1948, the date on which plaintiff said he suffered injury. Said defendant Ray Clark pleaded that it was not until after Robert W. Furlow, the plaintiff, had been discharged for unauthorized use of Mr. Clark’s truck that he became indignant at Mr. Clark and sought to prove a compensation claim again-st him.
The learned Trial Judge rendered judgment on the merits in which he fully analyzed the issues in this suit.
The question presented is mostly a question of fact. It was incumbent upon the plaintiff to prove by a preponderance of the evidence his alleged accident, his alleged injury and his -alleged disability. The Trial Judge, who had an opportunity to hear the witnesses and to observe their demeanor on the stand, concluded that the plaintiff had failed to prove his case. We have carefully examined the -record and we have come to the conclusion that the Trial Judge -was correct. We take the liberty of quoting excerpts -from the opinion of the Tria-l Court, to wit:
“The important questions to be decided in this case are:
“(1) Did the accident alleged actually occur;
“(2) If it did occur did it cause the injury and disability complained of;
“(3) If plaintiff is incapacitated is such incapacity the result of the injury complained of or of an injury or physical defects from which the plaintiff suffered prior to the time of the alleged accident; * * *
“We come now to a consideration of the first and most important question,, that is, did the accident alleged occur; in better words perhaps, has the plaintiff proved the *107 alleged accident by a preponderance of the evidence?
“In approaching a decision of this .question it must be remembered that the Court of Appeal has held that the testimony of the plaintiff alone may suffice to prove an accident provided his testimony is reasonably corroborated by physical facts and other circumstances.
“The plaintiff’s version of the accident begins on page 12 of the transcript of evidence. There we find, and I quote:
“ ‘ “Q. Explain how the accident happened? A. Well, I pulled up under the hopper to get some gravel for the Arrow Concrete Company out there on Nicholson Drive. I had loaded a half load of pea gravel and was going to pull up and get some -road gravel. After I loaded the pea gravel I iput one foot on the .fender of the truck, my right foot. As I started to get in the truck I slipped and fell. My spine hit the tailgate release on the back of the truck. I fell to the ground and I got back up and got in the truck. I finished loading my gravel.” ’
“On page 16 of the transcript, we find the following:
“Q. Were there any witnesses to the accident? A. No, sir.
“Q. Did you tell anyone else you were hurt? A. I told Mr. Beach, Mr. Bilbow Beach I got hurt.
“Q. Who is he? A. He has a truck with Magnolia Sand and Gravel Company like Mr. Clark had hauling gravel.
“Q. When did you tell Mr. Beach you were hurt? A. I told Mr. Beach some time later after I had gotten out of the hospital.
“On page 18 we find:
“Q. Do you remember what day of the week that was? A. On the 20th of February.
“Q. On what? A. February 20th.
“Q. What day of the week was that, Monday, Tuesday, Wednesday, Thursday, Friday or Saturday? A. I wouldn’t say definitely but I think it was on a Friday'. I don’t recall definitely the day it was on.
“Q. But you are positive it was the 20th day of February ? A. Yes, sir.
. “On page 29 we find the following;
“Q. Which load were you hurt on? A. The last load. ■
“Q. 'Where did it go tb? A. To the Concrete Company on Nicholson Drive.
“Q. You hauled one load to C. & S. Cleaners in the morning, and that afternoon you hauled a load to the Arrow people and that’s the load you got hurt on? A. Yes, sir.
“Plaintiff’s witness, Bilbo Beach, .was evidently called to prove that the alleged accident did occur on the 20th day of February, 1948, as alleged arid that plaintiff was hauling gravel on that day. However, on page 70 of the transcript of testimony, we find that this witness on this point said:
“It just appears to me, — I wouldn’t say off-hand because I didn’t keep no account.
“Q. You wouldn’t say if it was on the 18th, 19th or 20th? A. No, sir.
“The plaintiff says on page 16 of the transcript:
“I told Mr. Beach some time later, after I had gotten out of the hospital.
“He claims however that immediately after the accident he reported the same to the wife of the defendant Clark, which she denied.
“Aside from the fact that the plaintiff went to and was treated by Dr. Gladney at the hospital, there is not a single corroborating circumstance to prove the alleged accident. Any conclusion of an accident drawn from these circumstances, it seems to me is refuted by the testimony of Dr. Ban-nerman to the effect that the only disability plaintiff has, had existed for years and is due to a postural defect of an old leg injury, which has no relation to the kind of injury plaintiff claims to have received.
“Ordinarily, the exact date of an injury isn’t very material where the question of prescription is not involved. Here, however, it is extremely important because it appears that if the alleged- accident and injury did not occur on February 20, 1948, it did not occur at all.
*108 “Plaintiff admits that he hauled while working for Clark only three loads of gravel. He says he hauled two loads on February 20th, one in the morning and one in the afternoon, and that it was when he was loading his truck for the haul in the afternoon that he was hurt. This load he says he took to the Arrow Concrete Company on Nicholson. Drive.. The documentary evidence entirely contradicts, this statement. The manager of the Magnolia Sand and Gravel Company, Mr. Miller, produced and identified three slips covering the three loads hauled by plaintiff while in the employ of Clark. Two of those slips show that two loads were hauled February 16, 1948, and the third on February, 18, 1948. None of them were delivered to the Arrow Concrete Company on Nicholson Drive. The third and last load of gravel was delivered to C. & S. Cleaners, 4342 Scenic Highway in this parish.
“Again, the peculiar manner in which the alleged injury resulted, it seems to me borders on the impossible.
“Considering the evidence as a whole, I am of the opinion that the evidence submitted fails to show that the accident alleged occurred. ■'
“I am furthér of the opinion that if plaintiff 'is incapacitated such incapacity is the result of a physical defect which existed long prior to February 20, 1948, and I am also of the opinion that even this physical defect does not'render him permanently or totally disabled to do work of any reasonable character. On the contrary, as shown by the testimony of his own physician, the plaintiff is perfectly able to do the same kind' of work he was doing before the alleged accident. See testimony of Dr. Glad-ney appearing in the transcript, pages 57 and 58.
“In addition to this evidence, it seems to me that' the testimony of Dr. Bannerman is conclusive that whatever' incapacity the plaintiff has results entirely from his postural defect referred to at length by Dr. Bannerman in his testimony.
“In concluding this opinion .1 might state that the Court was not favorably impressed with the testimony of the plaintiff or his witnéss Marvin Ward. The credibility of both of them in my opinion is doubtful.”
The opinion-of the Trial-Judge on the facts appear not to be manifestly erroneous and we will therefore not disturb his ruling.
For reasons assigned the judgment of the District Court is affirmed.